**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| RUTH A. JOHNSON,         ) | CASE NO. 1:13-CV-1749 |
|                          ) | |
|     Plaintiff,     ) | JUDGE NUGENT |
|                          ) | |
|     v.             ) | MAGISTRATE JUDGE |
|                          ) | VECCHIARELLI |
| CAROLYN W. COLVIN,       ) | |
|     Acting Commissioner ) | |
|     of Social Security, ) | |
|                          ) | **REPORT AND RECOMMENDATION** |
|     Defendant. | |

Plaintiff, Ruth A. Johnson ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying her application Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423.  This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

### I. PROCEDURAL HISTORY

On September 9, 2010, Plaintiff filed an application for POD and DIB, alleging a disability onset date of October 1, 2005.  (Administrative Transcript ("Tr.") 14.) Plaintiff's application was denied initially and on reconsideration.  (*Id.*)  Plaintiff requested a hearing before an administrative law judge ("ALJ"), and, on January 31, 2012, an ALJ conducted a hearing, at which Plaintiff testified and was represented by

counsel. (*Id.*) A vocational expert ("VE") also testified. (*Id.*) On March 6, 2012, the ALJ found that Plaintiff was not disabled. (Tr. 14-23.) On June 14, 2013, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision. (Tr. 1.)

On August 12, 2013, Plaintiff filed her complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this matter. (Doc. No. 14, 16, 17.) Plaintiff asserts that substantial evidence does not support the ALJ's decision in this case because: (1) the ALJ failed to find that Plaintiff's right arm impairment was severe and failed to include restrictions related to her right arm/hand impairment in the RFC ; and (2) the ALJ erred in failing to obtain the testimony of a medical expert at Plaintiff's hearing.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in April 1966 and was 43 years old on her date last insured. (Tr. 21.) She had at least a high school education and was able to communicate in English. (*Id.*) She had past relevant work as a fast food worker, restaurant manager and administrative assistant. (*Id.*)

### B. Relevant Medical Evidence[1]

#### 1. Plaintiff's Providers

In December 2005, neurologist Mario M. Sertich, M.D., examined Plaintiff, who

---

[1] The ALJ determined that Plaintiff suffered from physical and mental impairments, and included limitations in the RFC that addressed both types of impairments. Plaintiff, however, only challenges the ALJ's conclusions with respect to her physical impairments.

2

complained of pain in her neck, right shoulder and arm, and numbness of her right thumb, occasionally radiating to the wrist. (Tr. 199.) Plaintiff rated her pain at 4 out of 10. (*Id.*) She reported working as an Avon representative. (*Id.*) Examination revealed decreased range of motion of Plaintiff's neck when turning to the right side. (Tr. 199-200.) Dr. Mertich examined x-rays and an MRI of Plaintiff's back, and opined that Plaintiff had C6 radiculopathy with degeneration and collapse of the C5-C6 disk, and mild degeneration at C6-C7 on the left. (Tr. 200.) He indicated that his plan was to treat her conservatively with over-the-counter medications and cervical traction. (*Id.*)

On December 28, 2005, Plaintiff reported increasing pain in her neck and arm after having discontinued steroids.[2] (Tr. 201.) Dr. Sertich discussed proceeding with an anterior cervical diskectomy and fusion at C5-C6. (*Id.*) On January 17, 2006, physician assistant Helen Karikas examined Plaintiff in preparation for the diskectomy, and noted Plaintiff's complaints of pain and numbness in her right hand, fingers and wrist, as well as her inability to lift greater than five pounds. (Tr. 202.)

On January 18, 2006, Plaintiff underwent an anterior cervical diskectomy at C5-6, C6-7, followed by fusion. (Tr. 240-41.) On February 14, 2006, Dr. Sertich examined Plaintiff. (Tr. 204.) Dr. Sertich described Plaintiff as "doing well" with "excellent strength" and good range of motion, and noted her report that she had no significant discomfort. (*Id.*) In April 2006, Dr. Sertich noted Plaintiff's report that she was experiencing much less pain and discomfort in her right shoulder and was "dong much better." (Tr. 205.) Examination revealed excellent range of motion and strength, with

---

[2] The record does not reflect when Plaintiff began taking steroids to treat her neck and back pain.

3

some numbness in her right thumb. (*Id.*) In August 2006, Dr. Sertich noted that Plaintiff was doing well, with x-rays showing "excellent" fusion and alignment. (Tr. 210.) Examination revealed good reflexes and range of motion, and Dr. Sertich released Plaintiff from follow up. (*Id.*)

On January 2, 2007, Plaintiff reported to Physician Assistant Karikas that she was experiencing pain in her right shoulder area, right arm and neck, as well as cracking in her neck when she turned her head. (Tr. 207.) Karikas recommended that Plaintiff obtain MRIs. (Tr. 208.) On January 23, 2007, Dr. Sertich reviewed Plaintiff's MRIs, which showed normal fusion and normal alignment with minimal spurring at C4-5, C5-6, and C7-T1, with no cord or nerve root compression. (Tr. 209, 261.) Shoulder x-rays revealed mild tendopathy in the distal supraspinatous with no tear or fluid accumulation. (Tr. 209, 260.) Plaintiff reported that, at the time of her prior complaints, she was caring for her mother-in-law, who was terminally ill, and had likely injured herself as a result. (*Id.*) She stated that she "feels much better now." (*Id.*) Physical examination revealed excellent strength. (*Id.*) Dr. Mertich released Plaintiff to return to all normal activities and advised her to treat with Motrin or other medications for symptoms. (*Id.*)

On December 29, 2008, neurologist Darshan Mahajan, M.D., examined Plaintiff, who was complaining of pain and pressure in her head. (Tr. 317-20.) He diagnosed Plaintiff with muscle contraction/migraine headaches, and prescribed Wellbutrin and Tranxene. (Tr. 320.) In January and April 2009 and January 2010, Plaintiff reported that her headaches were controlled, and that she was averaging about three or four each month. (Tr. 308-10, 311-13, 314-15.)

4

In February 2010, Jennifer Calabrese, M.D., examined Plaintiff, who complained of low back pain radiating to her right leg. (Tr. 334.) Examination revealed 5 out of 5 strength in Plaintiff's upper extremities. (*Id*.) Dr. Calabrese diagnosed Plaintiff with lumbosacral pain and prescribed physical therapy and a muscle relaxer. (*Id*.) In September 2010, Plaintiff complained of lumbosacral pain, occasional right leg weakness and frequent right hand weakness. (Tr. 330.) Examination revealed mild paraspinal tenderness at C7-T1. (*Id*.) Dr. Calabrese noted that Plaintiff had normal strength, range of motion and reflexes in her upper extremities. (*Id*.)

In April 2011, Plaintiff returned to Dr. Sertich, complaining of right arm and shoulder discomfort, related to activity. (Tr. 379-80.) She reported working as a trainer at a fast food restaurant. (Tr. 379.) Examination revealed good range of motion in Plaintiff's neck, as well as excellent strength in her upper extremities. (*Id*.) Dr. Sertich diagnosed Plaintiff with mild lumbar degenerative disk disease and mild lumbar spondylosis, as well as mechanical back pain. (Tr. 380.) He noted that her symptoms were reminiscent of fibromyalgia, and prescribed Cymbalta. (*Id*.) He opined that Plaintiff should stop taking narcotic pain medications, and that she would "do well on conservative treatment and with minimal medications." (*Id*.)

**2.     Agency Reports**

In November 2010, Dr. Calabrese completed a state agency work activity recommendation form. (Tr. 399-400.) She indicated that Plaintiff's diagnoses were chronic neck pain, degenerative disk disease, anxiety and panic. (Tr. 400.) Dr. Calabrese described Plaintiff's prognosis as fair and limited her to lifting less than five

5

pounds. (*Id*.) Dr. Calabrese opined that Plaintiff was capable of sedentary work, with the following limitations: standing/walking less than one hour in an eight-hour workday; sitting less than four hours in an eight-hour workday; a four to six-hour workday; and occasional lifting. (Tr. 399.)

**C.    Hearing Testimony**

    **1.    Plaintiff's Hearing Testimony**

At her January 2012 administrative hearing, Plaintiff testified as follows:

In October 2005, she visited a chiropractor after waking up with excruciating shoulder and arm pain. (Tr. 36.) During manipulation by the chiropractor, she felt a "snap," and the chiropractor advised her not to worry about it. (*Id*.) Three days later, she sought treatment in the emergency room for pain, and began treatment with Dr. Sertich. (*Id*.)

Plaintiff believed that the chiropractor had caused nerve damage resulting in pain and numbness in her right hand and thumb. (Tr. 36.) She dropped things with her right hand and rested the hand during the day. (Tr. 36-37.) Plaintiff did not lift anything heavier than 10 pounds with her right hand. (Tr. 37.)

The ALJ explained that he needed to determine Plaintiff's condition prior to September 30, 2009 – her date last insured – and she responded, "It's the same, I just, it hurts." (Tr. 37.) Plaintiff worked four to five hours each week as a training manager at McDonald's from 2007 until November 2011. (Tr. 38.) She also worked as an Avon representative. (Tr. 39.) Her Avon work required five to six hours each week typing on a computer and preparing products books. (Tr. 40.)

6

Plaintiff cared for her son, who was five years old during the relevant time period. (Tr. 40.) She also took care of her own personal hygiene, and prepared meals. (Tr. 40-41.) During the relevant time period, Plaintiff was able to perform light household chores, such as cleaning, dusting, sweeping and washing dishes. (Tr. 41.) She could do laundry and shop for groceries with assistance from her husband. (*Id.*) Plaintiff could sit and work at a computer for two to three hours before she needed to stand up and move around. (Tr. 50.) She could stand for two or three hours. (Tr. 51.) She could use her right arm to perform computer work for about an hour before it began to hurt and twitch. (tr. 51.) Then she would need to rest her arm for 20 minutes before using it again. (*Id.*)

Under questioning by her attorney, Plaintiff explained that she performed household chores "little bits at a time every day, sometimes I have to wait three to four times, like a week before I do that." (Tr. 54.) She performed household chores by working for short periods of time and then resting. (*Id.*)

### 2. Vocational Expert's Hearing Testimony

The ALJ described a hypothetical individual who was of Plaintiff's age during the relevant period of time, with Plaintiff's education and work history, with the following limitations:

> [A]ble to perform work at a light level; occasionally climbing ramps and stairs; never climbing ladders, ropes or scaffolds; frequently balancing; occasionally stooping, kneeling, crouching; never crawling. The person is right-hand dominant and limited to frequent pushing and pulling with the upper right extremity, limited to frequent handling and fingering with the right hand. Would require a sit/stand option every hour wherein she would not be off task but

7

> have the ability to sit/stand.
>
> * * *
>
> [T]he person would be let's say limited to tasks that are simple and routine and may be precluded from tasks that involve high production quotas and strict time requirements.
>
> * * *
>
> [T]his person would be required to be off task five percent of the time.

(Tr. 61, 68.) The VE opined that the hypothetical individual could perform work as a manager/trainer, cafeteria attendant or mail clerk. (Tr. 62, 63.)

### III.     STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks

8

disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." Abbot, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

## IV. SUMMARY OF COMMISSIONER'S DECISION

In his March 6, 2012 decision, the ALJ made the following findings of fact and conclusions of law:

1. Plaintiff last met the insured status requirements of the Act on September 30, 2009.

2. Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of October 1, 2005 through her date last insured of September 30, 2009.

3. Through the date last insured, Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and bulging/herniated discs in cervical spine status post anterior cervical diskectomy and fusion; bursitis right shoulder with bronchial plexitis; right rotator cuff tendinopathy, heachaches; post-

traumatic stress disorder; and depression.

4. Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. Through the date last insured, Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) except she: can occasionally climb ramps and stairs and never climb ladders, ropes or scaffolds; can frequently balance; can occasionally stoop, kneel and crouch; can never crawl; is right hand dominant and limited to frequently pushing and pulling with the right upper extremity and frequently handling and fingering with the right hand; must have a sit/stand option every hour wherein she will not be off task; is limited to tasks that are simple and routine, and is precluded from tasks that involve high production quotas and strict time requirements; will be off task 5% of the time due to pain.

6. Through the date last insured, Plaintiff was unable to perform any of her past relevant work.

7. Plaintiff was born in April 1966 and was 43 years old, which is defined as a younger individual age 18-49, on the date last insured. Plaintiff subsequently changed age category to closely approaching advanced age.

8. Plaintiff has at least a high school education and is able to communicate in English.

* * *

10. Through the date last insured, considering Plaintiff's age, education and work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.

11. Plaintiff was not under a disability, as defined in the Act, at any time from October 1, 2005, the alleged onset date, through September 30, 2009, the date last insured.

(Tr. 16-22.)

## LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512

(6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

Plaintiff asserts that substantial evidence does not support the ALJ's decision in this case because: (1) the ALJ failed to find that Plaintiff's right arm impairment was severe and failed to include sufficient restrictions related to her right arm/hand impairment in the RFC; and (2) the ALJ erred in failing to obtain the testimony of a medical expert at Plaintiff's hearing. The Commissioner argues that substantial evidence supports the ALJ's decision in this matter.

### 1. Right Hand/Arm Pain – RFC Determination

The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and bulging/herniated discs in cervical spine status post anterior cervical diskectomy and fusion; bursitis right shoulder with bronchial plexitis; right rotator cuff tendinopathy, heachaches; post-traumatic stress disorder; and depression.  (Tr. 16.)  Plaintiff argues that the ALJ erred in failing to conclude that Plaintiff's right arm impairment was a severe impairment, because her "hand and arm pain has significantly limited her ability to perform basic activities." (Plaintiff's Brief ("Pl. Br.") at 4.)

Plaintiff's arguments are not well taken.  As a preliminary matter, even if the ALJ erred by not including, at step two of his analysis, Plaintiff's right arm and hand pain as a severe impairment, such an error would be harmless.  Although the determination of severity at the second step of a disability analysis is a *de minimis* hurdle in the disability determination process, *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988), the goal of the test is to screen out totally groundless claims, *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir.1985).  Once an ALJ determines that a claimant suffers a severe impairment at step two of his analysis, the analysis proceeds to step three; accordingly, any failure to identify other impairments or combinations of impairments as severe would be only harmless error because step two would be cleared.  *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (citing *Maziars v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) ("Because the ALJ found

that Pompa had a severe impairment at step two of the analysis, the question of whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence."). An ALJ must consider all of a claimant's impairments, severe and not severe, at every subsequent step of the sequential evaluation process. See 20 C.F.R. § 404.1545(e).

Here, although the ALJ did not include Plaintiff's right arm and hand condition as a severe impairment, he found that she had multiple other severe impairments. Accordingly, Plaintiff cleared step two of the analysis. See *Anthony*, 266 F. App'x at 457.

Further, Plaintiff's argument that her right hand and arm pain merited further limitations in her RFC lacks merit. It is well established that the claimant bears the burden of establishing the severity of the impairments that determine her RFC. See *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("The determination of a claimant's Residual Functional Capacity is a determination based upon the severity of his medical and mental impairments. This determination is usually made at stages one through four [of the sequential process for determining whether a claimant is disabled], *when the claimant is proving the extent of his impairments.*") (emphasis added).

In the RFC, the ALJ limited Plaintiff to frequent pushing and pulling with her right arm, and to frequent handling and fingering with her right hand. (Tr. 18.) Plaintiff argues that "evidence of the record clearly demonstrates" that her right hand and arm pain required greater restrictions than those assigned by the ALJ. (Pl. Br. 4.) She points to no medical evidence, however, establishing that her right hand and arm pain interfered with her ability to perform basic work activities beyond the extent determined

13

by the ALJ. Although the record contains evidence that Plaintiff complained of pain and numbness in her right arm and hand, this evidence says nothing about the severity of Plaintiff's impairment. *See, e.g., Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) ("The mere fact that plaintiff suffered from a dysthymic disorder . . . does not automatically entitle plaintiff to the receipt of benefits. Rather, in order to qualify for the receipt of benefits . . . plaintiff must show that she was disabled by her dysthymic disorder."); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition.").

Plaintiff points to her testimony that her right arm pain interfered with her ability to work and to use the computer. The ALJ, however, determined that Plaintiff's testimony regarding the severity of the limitations resulting from her right arm and hand pain was not credible. Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, are entitled to considerable deference, and should not be discarded lightly. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987). However, the ALJ's credibility determinations must be reasonable and based on evidence from the record. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007); *Weaver v. Sec'y of Health & Human Servs.*, 722 F.2d 313, 312 (6th Cir. 1983). The ALJ also must provide an adequate explanation for his credibility determination. "It is not sufficient to make a conclusory statement 'that an individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" S.S.R. 96-7p, 1996 WL 374186 at *4 (S.S.A.). Rather, the determination "must contain

specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." *Id.*

Here, substantial evidence supports the ALJ's credibility finding.  To support his conclusion that Plaintiff's allegations regarding the severity of her impairment were not credible, the ALJ pointed to the medical evidence of record.  (Tr. 19-20.)  As noted by the ALJ, the medical evidence demonstrated that, other than undergoing a surgical procedure for her back pain, Plaintiff received conservative treatment from her physicians, who frequently observed that Plaintiff was doing well and had "excellent" range of motion and strength in upper extremities.  No medical evidence or testing reflected any cord compression or nerve root compression, and Plaintiff was eventually discharged to full activities by Dr. Sertich.

The ALJ also pointed to Plaintiff's testimony regarding her level of functioning – specifically, that she cared for her son and performed household chores – to support his conclusion that Plaintiff's testimony regarding her limitations was not credible. Plaintiff argues that the ALJ erred in relying on this testimony because, upon questioning by her counsel, Plaintiff testified that she performed household chores in short spurts with breaks, and with assistance from others.  According to Plaintiff, this testimony precludes the conclusion that Plaintiff's level of functioning in her household undermined her credibility with respect to the severity of her impairments.  Plaintiff is arguably correct, as her testimony in response to her counsel's questions reflected that she did not perform her household chores in a manner consistent with working.  To the

15

extent that the ALJ erred in relying on Plaintiff's testimony, however, that error does not require remand in this case.  Other evidence in the record – specifically, the medical evidence described by the ALJ – substantially supports the ALJ's credibility finding in this case.  See Kobetic v. Comm'r of Soc. Sec., 114 F. App'x 171, 173 (6th Cir. 2004) ("'When remand would be an idle and useless formality,'" courts are not required to 'convert judicial review of agency action into a ping-pong game.'") (quoting NLRB v. Wyman-Gordon Co., 394 U.S. 759, 766, n.6 (1969)).

Finally, Plaintiff contends that the ALJ erred by substituting his lay opinion that Plaintiff would be off task 5% of the time "for the uncontroverted opinions of professional experts in the field."  (Pl. Br. 4-5.)  Plaintiff does not, however, identify which professional expert opinion contradicted the ALJ's conclusion on this point.  Indeed, with the exception of Dr. Calabrese – who did not examine Plaintiff until after her date last insured, and who treated Plaintiff for conditions that arose after that date – no medical professional limited Plaintiff in her ability to work or concentrate.  Accordingly, this argument lacks merit.

### 2. Medical Expert Testimony

Plaintiff contends that the ALJ erred by failing to obtain the testimony of a medical expert at the administrative hearing.  Specifically, Plaintiff contends that, by failing to obtain such testimony, the ALJ "made a medical determination despite his lack of training, expertise and licensing as a medical professional."  (Pl. Br. 5.)  This argument lacks merit.

Although the ALJ has a duty to ensure that a reasonable record has been

16

developed, *see Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986), it is incumbent upon the claimant to provide an adequate record upon which the ALJ can make an informed decision regarding the claimant's disability status, *see Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). The agency recognizes that "an ALJ *may* need to consult a medical expert to gain more insight into what the clinical signs and laboratory findings signify in order to decide whether a medical opinion is well-supported or whether it is not inconsistent with other substantial evidence in the case record." Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions, SSR 96-2P, 1996 WL 374188 (S.S.A July 2, 1996) (emphasis added). The Sixth Circuit, however, has determined that "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001).

Here, other than making the conclusory allegation that the ALJ improperly substituted his lay opinion for the opinion of medical experts, Plaintiff does not indicate the reason that medical expert testimony was necessary in this case. She does not allege that the medical evidence was incomplete, ambiguous or inconsistent, *see* 20 C.F.R. § 1519a(b)(4) (describing the circumstances under which the agency may request a consultative examination), and the administrative record reflects that Plaintiff was represented by counsel at her administrative hearing, *see Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (noting that an ALJ has a "special duty" to develop the record when a claimant is not represented by counsel). Accordingly, there is no basis to conclude that the ALJ abused his discretion when he

17

failed to obtain the testimony of a medical expert, and this argument presents no basis for remand in this case.[3]

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

s/ *Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: May 22, 2014

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** See *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

---

[3] Plaintiff cites to several decisions to support her argument that the ALJ impermissibly rendered a medical opinion in this case. None of these decisions, however, requires remand in this case. In these cases, the ALJ in question: rendered an opinion that did not depend on any medical evidence, *see Winning v. Comm'r of Soc. Sec.,* 661 F. Supp. 2d 807, 824 (N.D. Ohio 2009), rejected the opinions of treating physicians on the basis of his own independent conclusion that the opinions were not plausible, *see Simpson v. Comm'r of Soc. Sec.,* 344 F. App'x 181, 194 (6th Cir. 2009), or relied on "her own interpretation of the medical data of record, ignored countless reports regarding the severity of Plaintiff's impairments as well as the limitations caused by those impairments, and improperly substituted her interpretation in place of the opinions of treating and state agency physicians," *see Smiley v. Comm'r of Soc. Sec.,* 940 F. Supp. 2d 592, 601 (S.D. Ohio 2013). In this case, the ALJ relied on medical evidence in the record to support his conclusions.